# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| RAYMOND EVANS,<br><br>                Plaintiff,<br>v.<br><br>RICHARD HEIDORN, JEANANNA ZWIERS,<br>NURSE LUTSEY, NURSE KATHY LEMONS,<br>NURSE KAMARAWSKI,<br>RANDY M. STAMMEN,<br>MICHAEL HAFEMAN, SGT. LANGE,<br>SGT. BRANDT, DEPUTY HEWITT,<br>DEPUTY BIRDSILL, DEPUTY SCHAUFF,<br>DEPUTY HAMMER, DEPUTY MARTINEZ,<br>DEPUTY HAMMERMEISTER,<br>DEPUTY VANDENHUEVEL,<br>DEPUTY KREYER, and<br>DEPUTY CUMMINGS,<br><br>                Defendants. | Case No. 10-CV-804-JPS<br><br><br><br><br><br>ORDER |

This matter is now before the court on the Sauk County defendants' motions for summary judgment.[1] Additionally, these defendants filed a motion to enlarge the time to reply by one day, which will be granted.

1.     SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S.

---

[1]The Sauk County defendants include: Randy M. Stammen, Michael Hafeman, Sgt. Lange, Sgt. Brandt, and Deputies Hewitt, Birdsill, Schauff, Hammer, Martinez, Hammermeister, Vandenhuevel, and Cummings.

317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

2.   FACTUAL BACKGROUND

The plaintiff, Raymond Evans ("Evans"), was incarcerated at the Sauk County Jail from December 29, 2006, to January 12, 2007, as a pretrial detainee. During the course of Evans' booking, he was asked to and did sign a form acknowledging receipt of the Sauk County Sheriff's Department Law Enforcement Center County Jail Inmate Rules and Regulations and Information Handbook. This included the rules and regulations regarding grievances, which require that an inmate "must request a grievance form and envelope within forty-eight (48) hours from the date and time of the incident or from the date and time the issue arose." (04/19/2012 Affidavit of Chief Deputy Kevin Fults in Support of Motion for Summary Judgment, ¶ 8, Exhibit J, p. 22). "Once received the grievance form must be completed and submitted (placed in the housing unit mail box or directly issued to a housing deputy) within forty-eight (48) hours from the date and time the inmate was issued the grievance form and envelope." *Id.*

Also during booking, the plaintiff was issued a standard jail uniform. On January 8, 2007, the plaintiff submitted an inmate request form requesting shorter pants. He wrote that he kept walking on the back of his pants. The plaintiff received a response the same day indicating that the pants are all the same length.

On January 9, 2007, the plaintiff fell on the stairway. Deputy Mitch Schauff, Deputy Birdsill, Deputy Cummings, and Sergeant Brandt found the plaintiff lying approximately half-way down the stairs at about 8:00 p.m. The jail officials asked the plaintiff a number of questions about whether he could wiggle his toes and move his leg and move his neck. The plaintiff said that he could do so and complained only of lower back pain. Correctional officers alerted a jail nurse, who advised them to move the plaintiff to the booking area via wheelchair. Sergeant Lange and Deputy Schauff moved the plaintiff down the steps and into a wheelchair, and the plaintiff was placed in a receiving cell. Evans believes that he should not have been moved into a wheelchair and should have been immobilized and placed in a neck brace and on a backboard.

Deputy Schauff observed the plaintiff's back and did not observe any redness or swelling. Nurse Swanson prescribed Ibuprofen and an ice pack and scheduled the plaintiff to see Dr. Romana the following morning.

The plaintiff was placed on a thirty minute observation schedule. The observation records indicate that at all times the plaintiff was observed during this period, he was on his bunk on his back, on the floor on a mat, or standing facing the toilet.

When Dr. Romana examined the plaintiff at 10:50 a.m. on January 10, 2007, Dr. Romana found some tenderness but no obvious signs of trauma. Dr. Romana did not consider it necessary for the plaintiff to remain immobile or to avoid using his legs. Nor did Dr. Romana believe that the plaintiff's medical condition required that he be handed food or be given a urine bottle. In fact, Dr. Romana ordered the plaintiff to move around as much as he could because it would help his medical condition.

Sauk County deputies followed Dr. Romana's orders. They did not bring the plaintiff food or give him a urine bottle, but they did assist the plaintiff in getting into the shower.

The plaintiff did not request an inmate grievance form or file a grievance using an inmate grievance form before he left the Sauk County Jail on January 12, 2007.

Nine months later, on September 24, 2007, the plaintiff filed an administrative grievance with both the Dane County Jail and the Sauk County Jail. And on February 7, 2008, the plaintiff filed a four page notarized complaint with the Sauk County Jail describing his fall, but he received no response.

3.  DISCUSSION

The Sauk County defendants submit that they are entitled to summary judgment because the plaintiff failed to exhaust the administrative remedies available to him at the Sauk County Jail. These defendants also argue that the plaintiff's claim alleging an unconstitutional policy must be dismissed because there is no evidence of an unconstitutional policy, practice, or custom. Finally, the Sauk County defendants maintain that they were not deliberately indifferent to any serious medical need of the plaintiff and that the plaintiff was not subjected to unconstitutional conditions of confinement as a pretrial detainee at the Sauk County Jail. The plaintiff's responsive arguments will be considered below.

3.1  Exhaustion

Under the Prison Litigation Reform Act (PLRA), "[n]o action shall be brought with respect to prison conditions under Section 1983[2] of this title or

---

[2] 42 U.S.C. § 1983.

any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(e). The PLRA exhaustion requirement requires "proper exhaustion," meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines. *Woodford v. Ngo*, 548 U.S. 81, 87, 92 (2006); see also, *Pozo v. McCaughtry*, 286 F.3d 1022, 1023 (7th Cir. 2002) ("To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require."). It is a defendant's burden to establish that a plaintiff has failed to exhaust administrative remedies. *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002).

However, "[i]nmates are not required to exhaust all administrative remedies - only those that are available." *Wilder v. Sutton*, 310 Fed. Appx. 10 (7th Cir. 2009) (citing *Woodford v. Ngo*, 548 U.S. 81, 102, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006); *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)). Examples of when administrative remedies are not available include: (1) "if grievances must be filed on a particular form, but the forms are not provided"; (2) "threatening a prisoner with violence for attempting to use an administrative process"; (3) "if a prisoner is told to wait to file a grievance, and that wait makes the claim untimely"; and (4) not responding to a prisoner's grievance or engaging in affirmative misconduct. *Wilder*, 310 Fed. Appx. at 13 (citations omitted). The court focuses on "whether the plaintiff did all he could to avail himself of the administrative process. If he followed the prescribed steps and could do nothing more, the available remedies were exhausted." *Id.*

The defendants have established that the plaintiff did not file a grievance at the Sauk County Jail.

However, the plaintiff also makes a number of arguments regarding exhaustion. First, the plaintiff suggests that the PLRA's exhaustion requirement might not apply to him as a pretrial detainee, but it does.

Second, the plaintiff asserts that the Sauk County grievance rules require only that a form be requested within forty-eight hours and that there is no deadline for submitting the grievance. In this argument, the plaintiff ignores the next sentence of the handbook, which provides that a grievance form must be completed and submitted within forty-eight hours of the date and time the inmate was issued the form and envelope.

Third, the plaintiff maintains that the grievance he filed over nine months later in Dane County should satisfy any exhaustion requirement, in part because he was a Dane County inmate who was only being held in Sauk County temporarily.

Finally, the plaintiff argues that some of his claims relate to areas outside the scope of the Sauk County Jail grievance system. He suggests that he has challenged Sauk County policies and procedures, specifically the clothing policy and the actions taken by the Sheriff's deputies after the plaintiff's fall down the stairs. The handbook provides, "Policies, Rules, Regulations, and Procedures of the Sauk County Jail ARE NOT subject to review as part of the inmate grievance process." (Fults Aff., Exhibit J, p. 22). Further, "[a] grievance must concern abuse, harassment, violation of civil rights or denial of specified privileges. _Group grievances or grievances submitted on the behalf of other inmates will not be reviewed or addressed._" *Id.* (Emphasis in original). The plaintiff is correct that any claims challenging

Sauk County policies or customs were outside the scope of the grievance procedures.

There is also an additional concern that precludes the court from determining that the plaintiff failed to exhaust his claims against the individual Sauk County defendants. The plaintiff fell on January 9, 2007, and was treated by Dr. Romana on January 10, 2007. He was then transferred from the Sauk County Jail on January 12, 2007. From this time line, without more specific information regarding the plaintiff's transfer, the court does not know whether the plaintiff had forty-eight hours after the conclusion of this incident to request a grievance form. Additionally, it is unclear how the plaintiff would have returned any completed grievance form to the Sauk County Jail after he was transferred, even if he had requested one before he left. There are simply too many unknowns for the court to grant the Sauk County defendants' motion for summary judgment with regard to exhaustion. However, the court will go on to consider the parties' arguments regarding the merits of the plaintiff's claims.

3.2   Plaintiff's Claims

The plaintiff has filed three complaints in this case. The first referenced only State defendants, whose motion for summary judgment the court has considered separately. On August 10, 2011, the plaintiff filed a motion to amend complaint, along with a proposed amended complaint, adding claims against the Sauk County defendants. In an Order entered October 14, 2011, the plaintiff was allowed to proceed "on the same Eighth Amendment claim as the original complaint" against the new Sauk County defendants, many of whom were not identified by name. The plaintiff was given the opportunity to conduct discovery to identify the unnamed Sauk

County defendants, which he did in a Second Amended Complaint filed March 16, 2012.

The plaintiff was allowed to proceed only on medical care claims, not policy claims regarding pant length or training of correctional officers to handle medical emergencies. Given that the Court's earlier orders did not include its analysis for disallowing such claims, will briefly address them here.

First, the provision of just one length of pants does not set forth a claim that rises to a constitutional level under the due process clause, which governs pretrial detainees like the plaintiff. A policy of having just one length of pants for inmates does not constitute punishment of those pretrial detainees whose pants are too short or too long. *See Bell v. Wolfish*, 441 U.S. 520, 35 (1979); *Lewis v. Downey*, 581 F.3d 467, 473 (7th Cir. 2009). Even if the plaintiff could prove that it was negligent to provide all inmates with the same length pants, negligence is not a constitutional claim.

Second, non-medical personnel are entitled to rely on the expertise of medical personnel. *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011); *Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005). Even if the plaintiff had been allowed to proceed on a claim regard the training of Sauk County correctional officers regarding handling medical emergencies, it would fail at this stage. The evidence shows that the defendants called a nurse who instructed the officers to put the plaintiff in a wheelchair and transport him to an observation room. No policy or training regarding the treatment of medical emergencies came into play, other than calling a medical professional for guidance.

### 3.3 Analysis

What remains are the plaintiff's claims under the Eighth and Fourteenth Amendments regarding the medical treatment he received at the Sauk County Jail. The parties also reference the plaintiff's conditions of confinement, but the plaintiff was not allowed to proceed on a separate conditions of confinement claim.

The plaintiff does not disagree with the statement of medical treatment presented by the defendants. Nor does he present detailed arguments regarding his medical treatment or conditions in observation in his brief or affidavit. Consequently, the court will review the plaintiff's medical treatment in light of the appropriate legal standard.

When considering a pretrial detainee's claim of inadequate medical care, the court turns to analogous standards of Eighth Amendment jurisprudence. *Jackson v. Ill. Medi-Car, Inc.*, 200 F.3d 760, 764 (7th Cir. 2002). Under this standard, "plaintiff has the burden of showing that (1) the harm to the plaintiff was objectively serious; and (2) that the official was deliberately indifferent to [his] health or safety." *Cavalieri v. Shepard*, 321 F.3d 616, 620 (7th Cir. 2003).

As noted earlier, the correctional officers who encountered the plaintiff after his fall contacted the jail nurse, who advised them to move the plaintiff to the booking area via wheelchair. Sergeant Lange and Deputy Schauff then moved the plaintiff down the steps and into a wheelchair, and the plaintiff was placed in a receiving cell. Although Evans believes that he should not have been moved into a wheelchair and should have been immobilized and placed in a neck brace and on a backboard, his disagreement with medical professionals about treatment needs does not

state a cognizable Eighth Amendment claim under the deliberate indifference standard of *Estelle v. Gamble*, 429 U.S. 97 (1976). *See Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003).

Deputy Schauff observed the plaintiff's back, but he did not see any redness or swelling. Nurse Swanson prescribed Ibuprofen and an ice pack and scheduled the plaintiff to see Dr. Romana the following morning. The plaintiff was observed every thirty minutes throughout the night. He was examined by Dr. Romana at 10:50 a.m. the next morning. Dr. Romana found some tenderness, but no obvious signs of trauma. Dr. Romana ordered the plaintiff to move around as much as he could because it would help his medical condition. For the remainder of the plaintiff's time at the Sauk County Jail, Dr. Romana's orders were followed, though officers did help the plaintiff into the shower.

A jury can "infer deliberate indifference on the basis of a physician's treatment decision [when] the decision [is] so far afield of accepted professional standards as to raise the inference that it was not actually based on medical judgment." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006). The facts presented in this case show medical decisions consistent with accepted professional standards and reasonable reliance on those medical decisions by non-medical personnel.

Accordingly,

IT IS ORDERED that the Sauk County defendants' motion to enlarge time to reply (Docket #100) be and the same is hereby GRANTED; and

IT IS FURTHER ORDERED that the Sauk County defendants' motion for summary judgment (Docket #67) be and the same is hereby GRANTED; and this action be and the same is hereby DISMISSED on its

merits as against the Sauk County defendants together with costs as taxed by the Clerk of the Court.

The Clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 29th day of January, 2013.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge